**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BRIDGE FUND CAPITAL
CORPORATION, a California
corporation; BIG BAD 1, LLC, a
California limited liability
company,
              *Plaintiffs-Appellees,*

              v.

FASTBUCKS FRANCHISE
CORPORATION, a Nevada
corporation; CHARLES HORTON, an
individual,
              *Defendants-Appellants.*

No. 08-17071

D.C. No.
2:08-cv-00767-
MCE-EFB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued January 14, 2010
Submitted September 16, 2010
San Francisco, California

Filed September 16, 2010

Before: Myron H. Bright,* Michael Daly Hawkins and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

14201

## COUNSEL

Peter C. Lagarias, Lagarias & Boulter, LLP, San Rafael, California, for the plaintiffs-appellees.

Margaret C. Toledo, Mennemeier, Glassman & Stroud LLP, Sacramento, California; Steven L. Solomon, Fastbucks Franchise Corp., Dallas, Texas, for the defendants-appellants.

## OPINION

M. SMITH, Circuit Judge:

In this case, we consider whether the "crux of the complaint" rule requires the question of arbitrability to be determined by the arbitrator when a plaintiff's challenge to the arbitration clause does not appear in his complaint. We hold that, as long as the plaintiff's challenge to the validity of an arbitration clause is a distinct question from the validity of the contract as a whole, the question of arbitrability is for the court to decide regardless of whether the specific challenge to

the arbitration clause is raised as a distinct claim in the complaint.

Plaintiff-Appellees Bridge Fund Capital Corp. and Big Bad 1, LLC (collectively, Plaintiffs) filed suit against Defendant-Appellant Fastbucks Franchise Corp. (Fastbucks, or Franchisor) in California state court, alleging various claims sounding in contract. One of the claims alleged was the unconscionability of certain provisions of the franchise agreement, but through apparent clerical error, Plaintiffs neglected to include in the complaint the list of the specific provisions of the franchise agreement they claimed were unconscionable. Fastbucks removed to federal court, and moved to compel arbitration. The district court declined to order the parties to arbitrate their dispute, agreeing with Plaintiffs, based on their motion papers, that the arbitration clause is unconscionable under California law. This appeal followed.

We address first Fastbucks's argument that the question of arbitrability was itself a question for the arbitrator to decide, and affirm the district court's decision that it was not. We also affirm the district court's determination that California law governs the unconscionability question, and that under that law the arbitration clause of the franchise agreement is unconscionable. Finally, we affirm the district court's decision to invalidate the entire arbitration clause rather than sever its offending provisions.

## FACTS AND PROCEDURAL BACKGROUND

Bridge Fund, a California corporation, and Big Bad, a California LLC, entered into franchise agreements with Fastbucks for the operation of "payday loan" franchises in California.[1]

---

[1] "Payday" loans are short-term consumer loans (usually less than 31 days) secured by a consumer's post-dated check. The payday industry targets low to medium income consumers as well as individuals who have no savings, and live paycheck to paycheck. Fastbucks specifically targets those individuals with low credit scores.

Fastbucks is a Nevada corporation with its principal place of business in Texas. The franchise agreements include a Texas choice-of-law clause, as well as an arbitration provision directing that "any and all disputes between [the parties] and any claim by either party that cannot be amicably settled shall be determined solely and exclusively by arbitration under the rules of the American Arbitration Association," In addition, the five-paragraph arbitration clause provides, in pertinent part, that (1) the arbitrator, a Texas bar member, shall hear the dispute in Dallas County, Texas; (2) the claims subject to arbitration shall not be arbitrated on a class-wide basis; (3) while the Franchisor may institute an action for temporary, preliminary, or permanent injunctive relief, the franchisee is not afforded the same remedy; (4) there is a one year statute of limitations for all claims; and (5) the parties are limited to recovery of actual damages, and waive any right to consequential, punitive or exemplary damages. In addition, the franchise agreement included an "Addendum" which mentioned that certain provisions of the franchise agreement may not be consistent with California law, and that "[i]f the Franchise Agreement contains provisions that are inconsistent with the law, the law will control."

On February 28, 2008, Plaintiffs filed a complaint in California state court, alleging breach of the franchise agreements, fraud and deceit, negligent misrepresentation, violation of the California Franchise Investment Law (CFIL), Cal. Corp. Code § 31000 *et seq.*, declaratory relief, and unfair trade practices under California state law. Generally, Plaintiffs allege that Fastbucks made numerous material misrepresentations in its Uniform Franchise Offering Circular (UFOC), such as representing that: Fastbucks offered a unique system of training; Fastbucks would provide a manual for its business system; and that Fastbucks provided a system for ensuring the collection of loans. Plaintiffs also asserted that certain provisions of the franchise agreement were unconscionable, but apparently neglected to insert into the complaint the list of specific provisions being challenged on that ground. Plaintiffs sought

rescission of the franchise agreement, damages (including punitive or exemplary damages), declaratory relief, costs, and attorney's fees.

On April 9, 2008, Fastbucks removed the action to federal court based on diversity of citizenship. Thereafter, Fastbucks moved to dismiss, or in the alternative, stay the action pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 3. Plaintiffs opposed the motion, arguing that the arbitration clause within the franchise agreement is unconscionable and unenforceable, pursuant to 9 U.S.C. § 2, which permits a court to refuse to enforce an arbitration agreement based on "generally applicable contract defenses such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Additionally, Plaintiffs argued that the arbitration provision within the franchise agreement was both procedurally and substantively unconscionable; namely, that the agreement was not mutually entered into; it improperly limits Plaintiffs' damages; it impermissibly shortens the statute of limitations; it contains invalid place and manner restrictions; it seeks to negate Plaintiff's unwaivable rights under the CFIL; and it wrongly bans class and consolidated actions.

The district court agreed with the Plaintiffs, and denied Fastbucks's motion. On appeal, Fastbucks argues that the district court committed three errors: (1) it failed to apply the "crux of the complaint" rule, pursuant to which it was for the arbitrator to decide the threshold issue of arbitrability; (2) it erred in applying California rather than Texas law; and (3) it abused its discretion in refusing to sever the portions of the arbitration provision it held to be unconscionable under California law.

## JURISDICTION AND STANDARD OF REVIEW

Fastbucks removed the case to federal court on the basis of diversity, 28 U.S.C. § 1332. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(A).

"The validity and scope of an arbitration clause are reviewed de novo." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006) (en banc). We review de novo the district court's choice of law analysis. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). We review a district court's choice not to sever unconscionable portions of an arbitration agreement governed by California law for abuse of discretion. *See Omstead v. Dell, Inc.*, 594 F.3d 1081, 1087 (9th Cir. 2010); *see also Armendariz v. Found. Health Psychcare Services, Inc.*, 6 P.3d 669, 695 (Cal. 2000); Cal. Civil Code § 1670.5(a).

## DISCUSSION

### I.  Abritrability

**[1]** "The arbitrability of a particular dispute is a threshold issue to be decided by the courts," *Nagrampa*, 469 F.3d at 1268, unless *that* issue is explicitly assigned to the arbitrator, *see Rent-A-Ctr., W., Inc. v. Jackson*, ___ U.S. ___, 130 S. Ct. 2772, 2775 (2010) (holding that arbitrability is a question for the arbitrator "where the agreement explicitly assigns that decision to the arbitrator"). While the validity of an arbitration clause can be a question for the arbitrator where the "crux of the complaint is that the contract as a whole (including its arbitration provision)" is invalid, the court determines the validity of the clause where the challenge is "specifically [to] the validity of the agreement to arbitrate." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).

**[2]** In other words, when a plaintiff's legal challenge is that a contract as a whole is unenforceable, the arbitrator decides the validity of the contract, including derivatively the validity of its constituent provisions (such as the arbitration clause). *See Buckeye*, 546 U.S. at 445-46 (explaining that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. [U]nless the challenge is to the arbitration clause itself, the issue of the

contract's validity is considered by the arbitrator in the first instance."). However, when a plaintiff argues that an arbitration clause, standing alone, is unenforceable—for reasons independent of any reasons the remainder of the contract might be invalid—that is a question to be decided by the court. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120 (9th Cir. 2008) ("[O]ur case law makes clear that courts properly exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause itself.").

**[3]** After *Buckeye*, we have applied the "crux of the complaint" rule as a method for differentiating between challenges to the arbitration provision alone and challenges to the entire contract. *Nagrampa*, 469 F.3d at 1268. In *Buckeye*, the Court held that "because [the plaintiffs] challenge[d] the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." 546 U.S. at 446. In *Nagrampa*, we distinguished *Buckeye* because "the complaint in *Buckeye*, unlike Nagrampa's complaint, did not contain claims that the arbitration provision alone was void and unenforceable, but rather alleged that the arbitration provision was unenforceable because it was contained in an illegal usurious contract which was void *ab initio*." *Nagrampa*, 469 F.3d at 1268. Fastbucks contends that *Buckeye*, and not *Nagrampa*, applies here because Plaintiffs' complaint does not contain a specific challenge to the arbitration clause.[2]

---

[2] Of course, had there been no clerical error on Plaintiffs' part, it seems likely there *would* have been a specific challenge to the arbitration clause. *Nagrampa*'s holding would then clearly apply, and Fastbucks's efforts to invoke some of *Nagrampa*'s isolated language would have been frivolous. Although the error does not ultimately affect Bridge Fund's position in this case, it goes without saying that counsel should carefully proofread documents upon which their clients' claims depend before filing them.

**[4]** We disagree. This case presents a third scenario not described in either *Buckeye* or *Nagrampa*; namely, a specific challenge to the arbitration clause that is not raised as a separate claim in the complaint. *See Winter v. Window Fashions Prof'ls, Inc.*, 83 Cal. Rptr. 3d 89, 93 (Ct. App. 2008) (distinguishing *Buckeye* and *Nagrampa* and holding that arbitrability was for the court to decide where the plaintiff's specific "challenge to the arbitration clause was [raised] in response to [a] petition to compel arbitration" rather than in the complaint). Because the material question is whether the challenge to the arbitration provision is severable from the challenge to the contract as a whole, *Buckeye*, 546 U.S. 444-45; *Rent-A-Ctr.*, 130 S. Ct. at 2778, the inclusion of, or failure to include, a specific challenge in the complaint is not determinative. *See Winter*, 83 Cal. Rptr. 3d at 93. What matters is the substantive basis of the challenge.

**[5]** The "crux of the complaint" matters when the complaint itself makes clear that the challenge to the arbitration clause is the same challenge that is being made to the entire contract. *Cf. Nagrampa*, 469 F.3d at 1271 ("Where, as here, no claim threatens to invalidate or otherwise directly affect the entire contract, the federal court must decide claims attacking the validity of the arbitration provision[.]"). The "crux of the complaint" rule, and our language in *Nagrampa*, did not create a pleading rule whereby the plaintiff *must* plead a separate and distinct challenge to the arbitration clause in order to have the court determine arbitrability. *See Winter*, 83 Cal. Rptr. 3d at 93; *see also Rent-A-Ctr.*, 130 S. Ct. at 2778 (explaining that the law requires "the basis of [the] challenge to be directed specifically to the agreement to arbitrate before the court will intervene," not that the *complaint* must be so directed). The rule was instead designed to be an analytical tool for use by courts in determining the nature of the plaintiff's challenge to the arbitration clause. Indeed, in cases in which the arbitration clause's invalidity is an entirely distinct issue from the contract claims in the case—the clearest cases in which arbitrability is to be decided by the court—we would

not generally expect the plaintiff to raise claims against the validity of the arbitration clause in the complaint, because such claims generally would be unrelated to plaintiff's principle prayer for relief. An independent challenge to the arbitration clause would become relevant only at the point plaintiff is required to oppose a motion to compel. In such a case, like the present one, the challenge to the validity of the arbitration provision would usually appear not in the complaint, but in the pleadings resisting a motion to compel arbitration. Indeed, in *Rent-A-Center*, the Court specifically looked to the arguments the plaintiff made in his opposition to the motion to compel, rather than strictly to the claims contained in the complaint. *See* 130 S. Ct. at 2779; *see also, e.g.*, *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 487 (6th Cir. 2001) (involving challenge to arbitration clause raised in opposition to motion to stay pending arbitration, not complaint); *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 262-65 (5th Cir. 2004) (same). Accordingly, we look not only to the complaint, but to Plaintiffs' motion papers, to determine if Plaintiffs' objections to the arbitration clause are severable from Plaintiffs' challenge to the validity of the franchise agreement as a whole.

**[6]** Contrary to Fastbucks's assertions, Plaintiffs' argument that the arbitration provision contained in the franchise agreement was both procedurally and substantively unconscionable, because the arbitration agreement (1) was not mutually entered into; (2) improperly limits Plaintiffs' damages; (3) impermissibly shortens the statute of limitations; (4) contains invalid place and manner restrictions; (5) seeks to negate Plaintiffs' unwaivable rights under the CFIL; and (6) wrongly bans class and consolidated actions, are clearly arguments marshaled against the validity of the arbitration clause alone, and separate from Plaintiffs' fraudulent inducement claims. The question of arbitrability, therefore, was properly decided by the district court.

## II.   Choice of Law

Fastbucks next argues that the district court erred in applying California law on the question of unconscionability because the franchise agreement contains a Texas choice of law clause.

**[7]** A federal court sitting in diversity applies the forum state's choice of law rules. *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam). Therefore, since this lawsuit was brought in California, we must apply California's choice of law rules to determine whether to apply California or Texas law to the unconscionability issue.

"When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Id.* Under the Restatement approach, the court must first determine "whether the chosen state has a substantial relationship to the parties or their transaction, . . . or whether there is any other reasonable basis for the parties' choice of law." *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1152 (Cal. 1992). "If . . . either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Id.* If the court finds such a conflict, it "must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 187, subd. (2)). If California possesses the materially greater interest, the court applies California law despite the choice of law clause.

Texas is Fastbucks's principle place of business and the place it receives royalties and franchise fees. The franchise agreements were formed in Texas and the franchisees received their training there. Accordingly, the parties do not

dispute that Texas has a substantial relationship to the parties and the transaction.

At the second step of the Restatement analysis, we ask whether application of Texas law concerning the unconscionability question would be contrary to a fundamental public policy of California. *See Nedlloyd*, 834 P.2d at 1152. In *Oestreicher v. Alienware Corp.*, the district court held that California had a fundamental policy against enforcing class action waivers contained in arbitration agreements, so California law applies to the unconscionability question in such cases — notwithstanding a contrary choice of law. 544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd* 322 F. App'x 489 (9th Cir. 2009); *see also Omstead*, 594 F.3d at 1086-87 (same).[3] By analogy, the question here is whether California has a fundamental policy against enforcing arbitration agreements that provide that (1) the arbitrator shall hear the dispute in Dallas County, Texas; (2) the claims subject to arbitration shall not be arbitrated on a class-wide basis; (3) while the franchisor may institute an action for temporary, preliminary, or permanent injunctive relief, the franchisee is not afforded the same remedy; (4) there is a one year statute of limitations for all claims; and (5) the parties are limited to recovery of actual damages and waive any right to consequential, punitive or exemplary damages.

[8] Enforcement of the arbitration clause in the franchise agreements in this case would contravene the fundamental California public policy in favor of protecting franchisees from unfair and deceptive business practices, as established by the CFIL. *See Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.*, 38 Cal. Rptr. 2d 612, 618 (Ct. App. 1995). In cases involving claims under the CFIL, California has an estab-

---

[3]Fastbucks relies on the district court decision in *Omstead v. Dell, Inc.*, 473 F. Supp. 2d 1018, 1025 (N.D.Cal. 2007), for its argument that Texas law should apply. However, since the parties briefed and argued this case, we reversed *Omstead*. 594 F.3d at 1086-87.

lished public policy against arbitration clauses that force franchisees to waive the limitations period, bar class actions, or limit punitive and consequential damages in violation of the statute's anti-waiver provisions. *See id.*, *see also Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court*, 34 Cal. Rptr. 3d 659, 672 (Ct. App. 2005) ("[T]o the extent the arbitration clauses purport to deny the arbitrators the ability to award full relief . . . , the arbitration clauses run contrary to statute and are unduly restrictive, possibly amounting to unconscionable waivers of statutory rights. The arbitration agreements should not be interpreted as written to deprive the arbitrators of authority to award punitive, consequential, or incidental damages[.]"). The parties do not dispute that the arbitration clause is enforceable under Texas law, which favors arbitration agreements and has no counterpart to the CFIL, and that Texas law therefore is in conflict with California law on this issue. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 n.5 (5th Cir. 2004) (noting that California law is more hostile than Texas law to arbitration agreements, and the application of one law instead of the other is often determinative on the question of the enforceability of the agreement).

**[9]** The final question, then, is which state has the materially greater interest in having its law regarding unconscionability of arbitration agreements enforced in this case. We agree with the district court that California has the greater interest. In assessing which state has a materially greater interest, California courts "consider which state, in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied." *Brack v. Omni Loan Co.*, 80 Cal. Rptr. 3d 275, 287 (Ct. App. 2008). Although Texas certainly has a significant general interest in enforcing contracts executed there and by its citizens, *see Woods Motor Co. v. Nebel*, 238 S.W.2d 181, 185 (Tex. 1951), and protecting its franchisors from significant liabilities, California has a substantial, case-specific interest in protecting its resident franchisees from losing statutory protections against fraud and unfair business practices, *see Wimsatt*, 38 Cal. Rptr.

2d at 618. Because the relevant franchises in this case were operated in California, by California citizens, California would suffer a significant impairment of its public policy if this arbitration clause were enforced against its citizens. On the other hand, we have seen no evidence in this case suggesting that Texas has a significant policy of protecting its franchisors from the impacts of the laws of other states in which those franchisors have franchise outposts. Further, Texas does recognize unconscionability as a contract defense —even if such a defense rarely succeeds in that state, and would not succeed here. *See AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 198 (Tex. Ct. App. 2003). Accordingly, applying California law to determine that the arbitration provision is unconscionable, even though Texas law would lead to a different result in this case, would not contravene a fundamental Texas public policy.

## III.   Unconscionability and Severability

**[10]** To defeat an arbitration clause, the litigant must show both procedural and substantive unconscionability, although "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 6 P.3d at 690. Procedural unconscionability involves " 'oppression' or 'surprise' due to unequal bargaining power" while substantive unconscionability focuses "on 'overly harsh' or 'one-sided' results." *Id.*

**[11]** California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree. *Armendariz*, 6 P.3d at 690. The district court determined that in this case there was "an absence of real negotiation and a disparity of bargaining power . . . between the parties." Indeed, "California courts have long recognized that franchise agreements have some characteristics of contracts of adhesion because of the 'vastly superior

bargaining strength' of the franchisor." *Nagrampa*, 469 F.3d at 1282. We conclude that procedural unconscionability has been established in this case.

**[12]** Next, as already described, California law holds that mandatory waivers of non-waivable statutory rights granted under the CFIL are the sort of one-sided and overly-harsh terms that render an arbitration provision substantively unconscionable. *See Wimsatt*, 38 Cal. Rptr. 2d at 618; *Indep. Ass'n of Mailbox Ctr. Owners*, 34 Cal. Rptr. 3d at 672. In addition, class action waivers are usually considered substantively unconscionable, *see Omstead*, 594 F.3d at 1086-87, as are terms granting the party of greater bargaining power the right to seek injunctive relief in court while denying such relief to the weaker party (at least in the absence of a valid business justification for such non-mutuality), *see Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671, 677-78 (Ct. App. 2002). The only business justification offered by Fastbucks for the non-mutual judicial remedy provision was its need to seek provisional remedies, which is insufficient under California law to justify non-mutuality (because California law protects parties' rights to seek provisional remedies in court regardless of any arbitration clause that may cover the parties' dispute). *See Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 148 (Ct. App. 1997) (citing Cal. Civ. Proc. Code § 1281.8). The class action and injunctive relief waivers are accordingly substantively unconscionable.

Moreover, "if the 'place and manner' restrictions of a forum selection provision are 'unduly oppressive,' or have the effect of shielding the stronger party from liability, then the forum selection provision is unconscionable." *Nagrampa*, 469 F.3d at 1287 (citations omitted). Because the selection of Texas as the forum (which is inherently intertwined with the choice of Texas law, *see Hall v. Superior Court*, 197 Cal. Rptr. 757, 761 (Ct. App. 1983)) makes the arbitration clause primarily a tool that Fastbucks may employ to evade California statutory protections for franchisees, the provision would

have the effect of shielding the stronger party from liability, and is thus likely unconscionable. In any event, because the Plaintiffs understandably expected, based on the "Addendum," that the forum selection clause might not be enforceable in California (and that California law would control in the event of a conflict between the law and the franchise agreement), Fastbucks has not shown that this provision was a product of a meeting of the minds between the parties. *See Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 916-17 (Cal. 1997) ("The [party seeking arbitration] bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.").

In sum, four of the five paragraphs of the arbitration clause are unconscionable, or at least unenforceable, in California. *See Indep. Ass'n of Mailbox Ctr. Owners*, 34 Cal. Rptr. 3d at 672. Fastbucks essentially concedes this. Fastbucks instead concentrates its energies on arguing that the district court abused its discretion by declining to sever the offending provisions. *See id.* ("To the extent that the arbitration clauses . . . seek to deprive plaintiffs of statutorily authorized remedies, or relief in court that would otherwise be allowable to them, they are unconscionable, and the trial court should have stricken them from the arbitration clause.").

California Civil Code § 1670.5(a) provides that,

> [i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

The California Supreme Court has construed § 1670.5(a) as giving "a trial court some discretion as to whether to sever or

restrict the unconscionable provision or whether to refuse to enforce the entire agreement." *Armendariz*, 6 P.3d at 695. In addition, it has identified two reasons for severing an unconscionable provision rather than voiding the entire contact: (1) "to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement"; and (2) because "the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme." *Id.* at 696. "The overarching inquiry is whether 'the interests of justice . . . would be furthered' by severance.' " *Id.* (quoting *Beynon v. Garden Grove Med. Grp.*, 161 Cal. Rptr. 146, 155 (Ct. App. 1980)).

Having found the major part of the arbitration provision substantively unconscionable, and imposed on Plaintiffs without any opportunity to negotiate, the district court determined that unconscionability "permeated" the entire arbitration agreement and was "overwhelming." "Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to [Fastbucks's] advantage." *Armendariz*, 6 P.3d at 697. Following *Armendariz*, then, the court determined that the arbitration agreements as a whole should not be enforced. *See id.* at 669 (finding severability inappropriate where the lack of mutuality permeated the agreement and removal of "the unconscionable taint" would require reforming the agreement, as opposed to striking a single provision); *see also Nagrampa*, 469 F.3d at 1293-94.

**[13]** We cannot find this was an abuse of discretion. For the district court to have severed the offending provisions would have left almost nothing to the arbitration clause. Fastbucks contends that the forum selection clause alone, combined with the one remaining unchallenged provision subjecting the arbitrator to the forum's legal ethics rules, could be enforced. But because the forum selection clause requires Texas arbitration, the district court could not have

simply severed it; the district court would have had to rewrite that paragraph in order to enforce it consistently with its (correct) unconscionability rulings. We find nothing to suggest that Plaintiffs will obtain an *undeserved* benefit from being able to avoid arbitration in this case; indeed, application of California law, and avoidance of the Texas arbitral forum, is consistent with the "Addendum" the Plaintiffs received as part of the franchise agreement and were entitled to rely upon. Similarly, Fastbucks would not suffer any *undeserved* detriment by being forced to litigate this case in California court. Although Fastbucks's arbitration scheme is not illegal, it is inconsistent with California public policy concerning the rights of California franchisees. The district court acted well within its discretion in concluding that under the circumstances of this case, the interests of justice favored refusal to enforce the arbitration provision in its entirety.

## CONCLUSION

We **AFFIRM** the district court's determination that the question of arbitrability was for it to decide, and we **AFFIRM** the district court's holding that California law applies and renders the arbitration agreement unconscionable and accordingly, unenforceable. The case is **REMANDED** to the district court for further proceedings.