*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2020

(Argued: November 12, 2020     Decided: June 8, 2021)

No. 20-946

_____

MARINA SOLIMAN,
ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellee,*

— v. —

SUBWAY FRANCHISEE ADVERTISING FUND TRUST, LTD.,

*Defendant-Appellant.*

_____

Before:     JACOBS, POOLER and BIANCO, *Circuit Judges.*

Defendant-Appellant Subway Franchisee Advertising Fund Trust, Ltd. appeals from an order of the United States District Court for the District of Connecticut (Meyer, *J.*), entered on March 5, 2020, denying Subway's motion to compel arbitration and stay the proceedings. Plaintiff-Appellee Marina Soliman had filed a putative class action lawsuit alleging that a text message sent to her smartphone by Subway after she opted out of a Subway promotional program violated the Telephone Consumer Protection Act. In its motion to compel arbitration, Subway argued that Soliman was bound by the promotional program's terms and conditions on Subway's website (containing an arbitration

provision), which were generally referenced along with a web address for the terms-and-conditions website on a print advertisement displayed in a Subway store that Soliman visited, and that Soliman viewed that advertisement to obtain a short code to enroll in the program by text on her phone. The district court denied Subway's motion and held, under California law, that Soliman was not bound by the arbitration provision because, *inter alia*, Subway did not provide reasonably conspicuous notice to Soliman that she was agreeing to the applicable terms and conditions on the website. We agree. A combination of barriers relating to the design and content of the print advertisement, as well as the accessibility and language of the relevant website itself, leads us to conclude that the terms and conditions were not reasonably conspicuous under the totality of the circumstances and, thus, a reasonable consumer would not realize she was being bound to such terms and conditions by sending a text message to Subway in order to begin receiving promotional offers.

Accordingly, we AFFIRM the district court's denial of Subway's motion to compel arbitration and REMAND the case for further proceedings consistent with this opinion.

ADRIAN R. BACON, (Todd M. Friedman, *on the brief*), Law Offices of Todd M. Friedman, P.C., Woodland Hills, CA; Brenden P. Leydon, Wocl & Leydon, L.L.C., Stamford, CT (*on the brief*), *for Plaintiff-Appellee*.

IAN C. BALLON (Lori Chang, Los Angeles, CA; Brian T. Feeney, Philadelphia, PA, *on the brief*), Greenberg Traurig, LLP, Los Angeles, CA, *for Defendant-Appellant*.

_____

JOSEPH F. BIANCO, *Circuit Judge*:

On April 9, 2016, after Plaintiff-Appellee Marina Soliman walked into a Subway sandwich shop in California, an employee referred her to an in-store, hard-copy advertisement. On the advertisement, Subway offered to send special offers to Soliman if she texted a keyword to the provided short code. Soliman complied, sent a text message to Subway, and Subway began responding, including by sending her, via text message, a hyperlink to an electronic coupon. Later, wanting to curtail further messages from Subway, Soliman alleges that she requested by text that Subway stop sending her messages, but her request was ignored. In response, she filed suit in the United States District Court for the District of Connecticut against Subway Franchisee Advertising Fund Trust, Ltd. ("Subway"), claiming a violation of the Telephone Consumer Protection Act ("TCPA"). Subway then moved to compel arbitration, arguing that a contract was formed because the printed in-store advertisement—the one from which Soliman got the keyword and short code to text Subway and receive promotional offers—included a reference to "[t]erms and conditions"(which were located on Subway's website) and provided the web address, also known as a uniform resource locator ("URL"), for the relevant website. *See* App'x at 21. Those terms and conditions

3

required Soliman to settle this dispute in an arbitral forum. The district court (Meyer, *J.*) denied the motion.

This appeal addresses whether, under California Law, a consumer was bound to the terms and conditions contained on a company's website, which were generally referenced on a print advertisement as "[t]erms and conditions" alongside the web address for the website containing the exact terms/conditions (including an arbitration provision), because that consumer viewed the advertisement on display in a store.

We affirm the district court's denial of the motion to compel arbitration. We conclude that under California law, Soliman is not bound by the arbitration clause contained in the terms and conditions at issue. As a threshold matter, Subway does not argue that Soliman actually saw the terms and conditions on the website. Although Soliman could still be bound by the terms and conditions if she were on inquiry notice of them, we hold that she was not on such notice. More specifically, Subway has failed to demonstrate that such terms and conditions would be clear and conspicuous to a reasonable person in Soliman's position for the following reasons: (1) Subway failed to provide evidence regarding the size of the advertisement at issue, or the print size contained within that advertisement;

4

(2) the reference to "[t]erms and conditions" was buried on the advertisement in a paragraph that was printed in significantly smaller font relative to the other text on the advertisement, and the reference itself was surrounded by a substantial amount of unrelated information; (3) the advertisement only vaguely referenced "[t]erms and conditions," and did not state that a consumer would be agreeing to those terms if she sent a text message to Subway's short code, nor did it otherwise direct the consumer to such terms; (4) access to the terms and conditions on the Subway website required Soliman to type in the URL text provided on the hard-copy print advertisement into an internet browser on her cell phone or some other device with internet browsing capabilities; and (5) once linked to the Subway website, the heading stated that it contained "terms of use for this website," thus potentially suggesting to a reasonable person (searching for conditions of the promotional offer) that the website did not contain any terms or conditions beyond those relevant to the use of the website. This combination of barriers leads us to conclude that the terms and conditions in this case were not reasonably conspicuous under the totality of the circumstances and, thus, a reasonable person would not realize she was being bound to such terms and conditions by texting Subway in order to begin receiving promotional offers.

5

Accordingly, we AFFIRM the district court's denial of Subway's motion to compel arbitration and REMAND the case for further proceedings consistent with this opinion.

## I.    BACKGROUND

The following facts are undisputed by the parties for purposes of Subway's motion to compel arbitration.

In 2016, Subway ran a "call to action" marketing campaign which gave consumers the opportunity to receive Subway Short Message Service ("SMS") Offers by texting a keyword to a short code. App'x at 44. In April of that year, Soliman went into a Subway sandwich shop in California. After going into the restaurant, "an employee pointed out a promotion where [she] could receive a free sub sandwich if [she] texted Subway to a specific number." App'x at 85. The promotion was a "call to action," hard-copy advertisement, which the parties agree had the following visual format[1]:

---

[1] In a declaration submitted to the district court, Soliman states that she was referred by a Subway employee to a "promotion," but that she is not sure she ever saw the specific hard-copy advertisement that Subway submitted to the district court. App'x at 85. However, during oral argument, the parties confirmed that they agree that Soliman saw either the print advertisement displayed in this opinion or a substantially similar version, and have raised no objection to our reliance on this advertisement in the record for the purposes of this appeal. Further, we note that, although the image of the hard-copy



App'x at 21.  The bottom right-hand side of the advertisement contained a block

of black text that is significantly smaller than the rest of the text on the

advertisement, which read:

> Limited Time Only. Message and data rates may apply. Max10msgs/mo-Msgs may be autodialed from SUBWAY Restaurants. Consent not required to buy goods/svcs. Terms and conditions at subway.com/subwayroot/TermsOfUse.aspx and Privacy Policy at subway.com/subwayroot/PrivacyPolicy-FWH.aspx. For help, text HELP to 782929. To opt-out, text **STOP** to 782929. Valid at participating restaurants. Additional changes for extra and deluxe. Plus tax. May not be combined with other offers, coupons or discount

---

advertisement displayed in this opinion states that consumers should send the keyword "OFFERS" via text message to Subway's short code to accept the promotional offer, the record reflects the parties' agreement that Soliman in fact sent the word "Subway" when accepting the offer.  *See* App'x at 40, 85; *see also* Appellee's Br. at 4-5.  In any event, this ambiguity in the record is immaterial to our analysis of the advertisement and the legal issues in this case.

7

cards. SUBWAY® is a Registered Trademark of Subway IP Inc. © 2016 Subway IP Inc. submul 26184[.]

App'x at 21.  The parties did not submit any evidence regarding the actual size of the entire advertisement, nor did they provide the various font sizes of the print contained therein.

Soliman took advantage of the offer by texting "Subway" to the short code provided on the advertisement.  Soliman quickly received a response, which prompted her to text her zip code and noted that a response would be considered consent to receive Subway offers.  Soliman complied almost immediately.  She then received another message, "Thanks for joining the LA area SOCALOFFERS SUBWAY Text Club! Help?  Txt HELP, Stop?  Txt STOP or 8447887525 Msg&data rates may apply."   App'x at 41.  Next, within approximately one minute, she received a hyperlink to an electronic coupon via text on her phone for a "free 6 inch Classic sub" (with the purchase of a 30-ounce drink).  App'x at 41.  From the consumer's perspective, this two-step procedure took a total of less than three minutes to complete, all while Soliman was in the store.

Several months and at least one text message later, Soliman alleges that she sought to cease further communications from Subway.  In particular, she alleges that, on December 1, 2016, she texted the word "STOP" to the provided number,

and received a response stating, "[y]ou have been unsubscribed from all programs on 782929 and will no longer receive any text alerts."[2] App'x at 3. On December 5, 2016, however, Subway texted Soliman again, stating that she had a "weekly . . . offer. . . waiting" for her. App'x at 84.

Soliman subsequently filed suit in the United States District Court for the District of Connecticut, alleging that Subway's text message, after her direction that such texts cease, violated the TCPA. Subway then moved to compel arbitration and stay the federal proceedings. It argued that the in-store advertisement referenced "[t]erms and conditions" and gave a URL where those terms could be reviewed. App'x at 21. That URL is the web address for a Subway website that contained a numbered list of terms and conditions underneath a heading that reads, "PLEASE CAREFULLY REVIEW THESE TERMS OF USE FOR THIS WEBSITE." App'x at 34. Within those terms and conditions was, at the time, a paragraph numbered fourteen and entitled "Choice of Law & Dispute Resolution," which contained a provision requiring arbitration of "[a]ny controversy or claim arising out of or relating to" an alleged breach of those terms. App'x at 37-38. Thus, Subway argued to the district court, and now argues to this

---

[2] Subway states that it has no record of receiving that text from Soliman.

Court, that Soliman reached a contractual agreement with Subway and is therefore bound to arbitrate her claim.

On March 5, 2020, the district court denied Subway's motion to compel arbitration. *Soliman v. Subway Franchisee Advert. Fund Tr. Ltd.*, 442 F. Supp. 3d 519, 528 (D. Conn. 2020). First, it held that the arbitration clause was not "reasonably conspicuous" because "a reasonably prudent consumer would not have had inquiry notice of the arbitration clause on Subway's website." *Id.* at 527. Second, the court held that Soliman did not "unambiguously manifest" intent to be bound by the arbitration clause by sending a text to the short code. *Id.* at 527-28. Because the court determined that there was no agreement to arbitrate, it declined to consider "the parties' additional arguments about the scope of the arbitration agreement or whether the arbitration agreement was unconscionable." *Id.*

This appeal followed.[3]

---

[3] Subway timely appealed the district court's order pursuant to 9 U.S.C. § 16(a)(1)(C), which permits an interlocutory appeal from the denial of a motion to compel arbitration.

10

## II. DISCUSSION

### A. Standard of Review

"We review *de novo* the denial of a motion to compel arbitration." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 72 (2d Cir. 2017). Whether the parties have bound themselves to arbitrate—that is, whether a contract was formed—is also subject to *de novo* review. *Id.* at 72-73. The district court's factual findings are reviewed for clear error. *Id.* at 73. "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (internal quotation marks omitted).

Courts deciding motions to compel arbitration "apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). On a motion for summary judgment, the court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (second

alteration in original) (internal quotation marks omitted). In deciding such a motion, we "draw[ ] all reasonable inferences in favor of the non-moving party." *See Meyer*, 868 F.3d at 74.

### B. Legal Framework

The Federal Arbitration Act ("FAA") dictates that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Supreme Court has "described this provision as reflecting . . . a liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted). Importantly, the FAA "places arbitration agreements 'upon the same footing as other contracts.'" *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511 (1974)). However, the FAA is not a substitute for contractual assent, and we will not enforce arbitration unless and until it is determined that an agreement exists. *Meyer*, 868 F.3d at 73. Whether an agreement to arbitrate exists between the parties is governed by state contract law. *Nicosia*, 834 F.3d at 229. Here, the parties agree that California law applies to the question of contract formation.

## C.     Application

At issue here is whether Subway has shown that Soliman is bound by the arbitration provision located within the terms and conditions on Subway's website. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (noting that under California law the burden of proving a contract exists is with the party seeking enforcement). Although it is undisputed that Soliman never actually saw the terms and conditions on the website, including the arbitration clause therein, Subway argues that the advertisement put her on reasonable notice of those terms such that she should be bound by them.

Under California law, the basis of a lawfully formed contract is "a manifestation of mutual assent." *See Binder v. Aetna Life Ins. Co.*, 89 Cal. Rptr. 2d 540, 551 (Cal. Ct. App. 1999). We have held that, even where the offeree does not have *actual* notice of the contract terms, she will still be bound by such terms if a "reasonably prudent" person would be on *inquiry* notice of those terms and she unambiguously manifested assent to those terms. *Meyer*, 868 F.3d at 74-75 (applying California law); *accord Starke*, 913 F.3d at 289 (applying New York law).[4]

---

[4] The *Starke* case applied New York law. *See* 913 F.3d at 288. However, we have held that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." *Meyer*, 868 F.3d at 74 (internal

13

Inquiry notice is "actual notice of circumstances sufficient to put a prudent [person] upon inquiry." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 n.14 (2d Cir. 2002) (internal quotation marks omitted). A person is on inquiry notice of terms if they are presented in a clear and conspicuous manner. *See id.* at 30; *Starke*, 913 F.3d at 289. Accordingly, here, we must first determine if the Subway terms of use—and, by extension, the arbitration provision contained therein—were reasonably clear and conspicuous such that a reasonable person in Soliman's shoes would have been on inquiry notice of them. *Meyer*, 868 F.3d at 74-75.

Reasonable conspicuousness turns on the "design and content of the relevant interface." *Starke*, 913 F.3d at 289 (analyzing this issue "[i]n the context of web-based contracts"). Subway analogizes the facts here to prior cases in which this Court and others have upheld certain web-based contracts, even in the absence of express consent, where the terms and conditions are conspicuously hyperlinked on the website accessed by the user (sometimes referred to as "browsewrap agreements"). Soliman counters that those cases are factually distinguishable because, among other things, this case did not involve hyperlinked

_____

quotation marks omitted). Accordingly, our precedent applying New York law in similar cases provides helpful guidance.

terms and conditions in a text message to Soliman, but rather would have required Soliman to see the inconspicuous reference to terms and conditions on a print advertisement and then type the URL into her internet browser to access Subway's terms and conditions for the promotion.

We have emphasized that "[c]lassification of web-based contracts alone . . . does not resolve the notice inquiry," and "[i]nsofar as it turns on the reasonableness of notice, the enforceability of a web-based agreement is clearly a fact-intensive inquiry." *Meyer*, 868 F.3d at 76. Thus, regardless of the precise nature of a web-based contract, the ultimate question concerning inquiry notice on a motion to compel arbitration remains the same—namely, whether "the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Id*. As set forth below, under the facts of this particular case, we conclude that Subway has failed to demonstrate that the arbitration provision would have been conspicuous to a reasonably prudent consumer for several reasons.

First, neither Soliman nor Subway provided evidence in the district court showing the size of the advertisement that Soliman saw in the Subway store. Thus, it is entirely possible that it was not a poster on a store window, door, or wall, but

15

rather may have been (as suggested at oral argument) a tri-fold, cardboard sign sitting on a store counter. Obviously, the size of the advertisement, including the print contained therein, is a critical factor in determining whether there was clear and conspicuous notice to Soliman. At this stage, the burden is on Subway to show reasonable conspicuousness. *See Meyer*, 868 F.3d at 74 (noting that, when "deciding motions to compel," we will "draw[] all reasonable inferences in favor of the non-moving party"); *accord Arnaud v. Doctor's Assocs. Inc.*, 821 F. App'x 54, 57 (2d Cir. 2020) ("Since Subway has not provided facts demonstrating Arnaud's knowledge of the terms and conditions, Arnaud needed to do no more to substantiate his factual allegations at this stage."). Therefore, in light of this evidentiary gap in the record, we presume that this factor regarding the size of the print favors Soliman's position.

Second, the reference to the URL for the website containing Subway's terms and conditions was not conspicuous in the context of the entire advertisement; instead, it was buried within a fine-print paragraph with over eighty other words, was not set off in any way within that paragraph (by color, emphasis, etc.), and was in a font that (regardless of its unknown actual size) was significantly smaller than the rest of the text on the page. Thus, based upon this record, we disagree

16

with Subway's bold contention that "any 'reasonably prudent consumer' who saw the Subway® ad and followed its directions to text a keyword to short code 782929 to receive text-based deals (as appellee did here) would have also undoubtedly seen the adjacent notice informing consumers of the terms and conditions stated on the ad and made available on the Subway® website at the specified URL/webpage location." Appellant's Br. at 8. We have significant doubt, looking at the small-print disclaimer box in the context of the advertisement as a whole, as to whether a reasonable consumer would have noticed the reference to terms and conditions at all.

Subway suggests that conspicuousness is established here because the disclosure of the URL leading to the terms and conditions appeared in "plain view" on the Subway advertisement and in "close proximity" to the short code (and that the difference in font size made it even more noticeable). Appellant's Br. at 18 n.3. However, we have emphasized, in the context of hyperlinks on webpages, that "[p]roximity to the top of a webpage does not necessarily make something more likely to be read in the context of an elaborate webpage design." *Nicosia*, 834 F.3d at 237; *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("[E]ven close proximity of the hyperlink to relevant buttons users

17

must click on—without more—is insufficient to give rise to constructive notice."). The same is true for a print-based advertisement containing a URL that the consumer can type into an internet browser to access the terms and conditions of a promotional offer: proximity of the URL to the information regarding the offer, although important, is not dispositive. Instead, proximity must be analyzed in light of the website or advertisement design as a whole, including additional factors (such as font size and the display of other information on the advertisement in and around the notice provision regarding the terms and conditions) that might impact the conspicuousness of such notice. *See, e.g.*, *Nguyen*, 763 F.3d at 1177 ("[T]he conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement.").

Similarly, although Subway asserts that reference to the URL was made more noticeable because of the use of a different font size and color than the rest of the advertisement, that argument ignores consideration of whether the differing font size is too small to be conspicuous and/or whether the surrounding information in different colors and fonts "generally obscure[s] the message."

18

*Nicosia*, 834 F.3d at 237 (finding no inquiry notice as a matter of law as to terms and conditions on a webpage where "[t]he message itself—'By placing your order, you agree to Amazon.com's . . . conditions of use'—[was] not bold, capitalized, or conspicuous in light of the whole webpage"); *see generally Specht*, 306 F.3d at 32 ("[W]here consumers are urged to download free software at the immediate click of a button, a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms. The [Company's] webpage screen was printed in such a manner that it tended to conceal the fact that it was an express acceptance of [the Company's] rules and regulations." (footnote and internal quotation marks omitted)). Here, we agree with the district court that the "small-print disclaimer in the advertisement" was "dwarfed by the surrounding colorful text and imagery and . . . reference[d] terms and conditions only at the end of the second line," such that it would not be conspicuous to a reasonably prudent consumer. *Soliman*, 442 F. Supp. 3d at 524.

Third, our concern about the lack of inquiry notice is further heightened in this case by the fact that neither the advertisement's larger-font text (promoting Subway's offer) nor the fine-print disclaimer state that a consumer who opts to participate in the promotion by texting the short code is also agreeing to be bound

19

by Subway's terms and conditions. Instead, the ad obscurely references, "[t]erms and conditions at subway.com/subwayroot/TermsOfUse.aspx." App'x at 21.

Although it is axiomatic that no express agreement (such as clicking on a box indicating "I agree," which is often referred to as a "clickwrap agreement") is necessary to establish reasonable conspicuousness under the law, we have emphasized the importance of clearly signaling to the consumer in some fashion that, by continuing with the transaction or by using a website, she will be agreeing to the terms contained in an accompanying hyperlink. *See Starke*, 913 F.3d at 293 (finding terms and conditions were not clear and conspicuous where the email at issue "in no way signal[ed] to [plaintiff] that he should click on the link, and it [did] not advise him that he would be deemed to agree to the contract terms in the document to be found by clicking that link"); *see also Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) (although noting it was "a somewhat close call," concluding that terms and conditions containing a forum selection clause were reasonably communicated when, among other things, plaintiff "received three separate emails stating that all . . . passengers must agree to the Booking Terms and Conditions" and "a capitalized, bolded heading '**TERMS AND CONDITIONS**' heralded one of th[o]se statements"); *Nguyen*, 763 F.3d at 1178 n.1

20

("[W]here courts have relied on the proximity of the hyperlink to enforce a browsewrap agreement, the websites at issue have also included something more to capture the user's attention and secure her assent.").

Subway suggests that our decision in *Meyer* somehow modified our prior precedent on this important issue, such that (according to Subway) pre-*Meyer* cases carry little weight to the extent they emphasized the need to place the user on notice that utilizing a website or smartphone application constituted agreement to terms and conditions referenced in an accompanying hyperlink. *Meyer* did no such thing. Instead, *Meyer* reiterated our well-settled view that, regardless of the medium, we must look at both the design of the screen (or, in this case, print advertisement) and the particular language used in relation to the hyperlinked or otherwise-referenced terms and conditions. *See* 868 F.3d at 78 ("Turning to the interface at issue in this case, we conclude that the design of the screen *and language used* render the notice provided reasonable as a matter of California law." (emphasis added)); *accord Starke*, 913 F.3d at 289 ("In the context of web-based contracts, we look to the design *and content of the relevant interface* to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." (emphasis added)).

21

Subway also cites *Meyer* for the proposition that "[a]s long as the hyperlinked text was itself reasonably conspicuous . . . a reasonably prudent smartphone user would have constructive notice of the terms," 868 F.3d at 79, and suggests that the analysis is all about proximity. However, that limited quotation to *Meyer* overlooks the immediately preceding sentence of the Court's analysis where, in finding the notice at issue sufficiently conspicuous, we relied upon the language on an uncluttered payment screen that expressly warned, "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY," and included hyperlinks to the Terms of Service and Privacy Policy. *Id.* at 78-79. We viewed that language as a "clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms." *Id.* at 79. Later in the analysis, we reiterated that, although no express assent to the terms and conditions was contained on the payment screen (or required under the law to form a contract), the text "*expressly warned* the user that by creating an . . . account, the user was agreeing to be bound by the linked terms." *Id*. at 80 (emphasis added).

The importance of signaling that a consumer is about to agree to something is even more pronounced in the context of a promotional offer for a coupon,

because a reasonable consumer could easily conclude that any vague reference to "[t]erms and conditions" (assuming the consumer noticed the reference at all) simply contained details about where and how the coupon could be used, as opposed to the consumer understanding that she was affirmatively agreeing to anything (much less to arbitration of any disputes). In other words, the notice in Subway's advertisement does not even advise the consumer that, by texting the keyword to Subway, they are agreeing to any terms or conditions contained on the Subway website referenced by the URL. *See, e.g.*, *Arnaud*, 821 F. App'x at 56 (holding there was no inquiry notice where, among other things, the Subway website "did not provide language informing the user that by clicking 'I'M IN' the user was agreeing to anything other than the receipt of a coupon"). The absence of such language, or at least some other signal to the terms and conditions, further undermined the conspicuousness of the notice in this case.

As the California Court of Appeal similarly explained in *Long v. Provide Commerce, Inc.*, in connection with hyperlinks on websites:

> In our view, the problem with merely displaying a hyperlink in a prominent or conspicuous place is that, without notifying consumers that the linked page contains binding contractual terms, the phrase "terms of use" may have no meaning or a different meaning to a large segment of the Internet-using public. In other words, a conspicuous

23

"terms of use" hyperlink may not be enough to alert a reasonably prudent Internet consumer to click the hyperlink.

200 Cal. Rptr. 3d 117, 126-27 (Cal. Ct. App. 2016).

Thus, the instant situation is in stark contrast to *Greenberg v. Doctors Associates, Inc.*, which also involved a Subway promotional campaign and a motion to compel arbitration as to plaintiff's claim for receiving text messages in violation of the TCPA. 338 F. Supp. 3d 1280, 1281 (S.D. Fla. 2018). There, the court held that the plaintiff was on notice as to the terms and conditions related to the promotional offer because he admitted in the complaint that the offer stated, "By clicking 'Sign me up' you agree to receive email promotions and other general email messages from [S]ubway Group. In addition you agree to the Subway Group Privacy Statement and Terms of Use." *Id*. at 1282 (quoting the complaint). It is unclear why Subway did not use similar language here either in the print advertisement or in its subsequent text communications with consumers responding to the advertisement.[5]

---

[5] Although Subway refers to the fact that Soliman "received her coupon after completing a double opt-in process to confirm her consent to receive promotional texts," Appellant's Br. at 2, the text message sent by Subway (after Soliman's initial text) that allowed Soliman to complete the two-step enrollment process simply prompted her to text her zip code and noted to her that a response would be considered consent to receive Subway offers, but provided no hyperlink, nor did it make any reference, to the terms and conditions.

Fourth, in analyzing the totality of the circumstances, we also must consider that the URL for the website containing the terms of use was in a hard-copy format on a sign, rather than a clickable hyperlink on an internet-capable device.  To be sure, it is well settled that a contract may direct a person to review relevant terms located in a different place.  *See, e.g.*, *Specht*, 306 F.3d at 31 ("[R]eceipt of a physical document containing contract terms or notice thereof is frequently deemed, in the world of paper transactions, a sufficient circumstance to place the offeree on inquiry notice of those terms.").

However, we may (and should) consider the level of difficulty in accessing the incorporated terms in our analysis of clarity and conspicuousness.  When a person is invited to click on a conspicuous hyperlink, *Meyer*, 868 F.3d at 75, they may do so with ease.  By contrast, when a consumer must type in a thirty-seven-character URL to their cellphone or computer, it is more difficult to navigate to the terms of use in order to confirm whether an ambiguous reference to "[t]erms and conditions" in the print advertisement applies to the proposed transaction.  *See* App'x at 21.  In making this observation, we do not suggest that a hard-copy medium cannot incorporate enforceable contractual terms via a printed URL in a manner that satisfies the reasonably conspicuous standard.  As we have noted,

"[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). Instead, we simply note the somewhat obvious reality that companies relying on the mixed-media incorporation of contractual terms involving a combination of a print advertisement, text messaging, and a website (rather than a purely paper or purely web-based medium) must take into account the practical obstacles in each situation relating to the conspicuousness of the notice, as well as access to the terms and conditions, that may be created by the various modes of communication being utilized. *See Specht*, 306 F.3d at 32 ("When products are 'free' and users are invited to download them in the absence of reasonably conspicuous notice that they are about to bind themselves to contract terms, the transactional circumstances cannot be fully analogized to those in the paper world of arm's-length bargaining."). Accordingly, in this case, the hard-copy format of the URL created yet another barrier to reasonable clear and conspicuous notice of the terms of use in combination with the other obstacles previously identified.

Finally, if a user were to copy the URL from the advertisement into their phone or computer's internet browser, they would be taken to a page that reads,

"PLEASE CAREFULLY REVIEW THESE TERMS OF USE *FOR THIS WEBSITE*."
App'x at 34 (emphasis added). Accordingly, even if Soliman had accessed the
Subway website, it would have been entirely reasonable for her to believe—based
on the bland reference to "[t]erms and conditions" on the print advertisement and
the website's heading noting that the terms were "for this website"—that the terms
of use on the website applied only to website users, and not to promotion
participants. By making this observation, we certainly do not suggest that the
website heading would need to specifically reference the promotional offer to
provide sufficient inquiry notice to a reasonable consumer; rather, we simply note
that the heading should not be so narrow that it could create confusion in the mind
of a reasonable consumer as to whether the terms of the promotion would even be
contained on that website.

In short, taking the facts together as a whole, we conclude that the terms and
conditions in this case were not reasonably conspicuous and, thus, a reasonable
consumer would not realize she was agreeing to be bound to such terms and
conditions by texting Subway in order to begin receiving promotional offers.

Although Subway argues that such a conclusion would run contrary to prior
decisions under analogous circumstances, we disagree. As noted *supra*, Subway

relies heavily upon our decision in *Meyer*, where we applied California law and concluded that a user had agreed to contract terms contained in documents provided only by a hyperlink on Uber's smartphone application. 868 F.3d at 78-80. However, the factual circumstances in *Meyer*, including the clear and conspicuous manner in which the notice regarding the terms and conditions were displayed on the smartphone application at issue, are very distant from the circumstances here. Specifically, in *Meyer*, the user saw a single screen on their phone with a "REGISTER" button, below which appeared the following text: "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY," and included hyperlinks to documents titled "Terms of Service" and "Privacy Policy." *Id.* at 71, 76. That page was displayed in the following manner:

28



*Id.* at 82 add. B.

In holding that the user had agreed to the hyperlinked terms and conditions, we relied on multiple factors that showed the arbitration agreement was clear and conspicuous: the payment screen was uncluttered, with relatively few fields and only one external link, *id.* at 78; the text including hyperlinks to the relevant documents appeared directly below the registration button, *id.*; the user did not need to scroll to see the links to the relevant documents, *id.*; the text including hyperlinks to the relevant documents was "temporally coupled" with the

29

registration button, *id.*; and, as discussed above, the language "[b]y creating an Uber account, you agree" was a "clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms," *id.* at 78-79.  Moreover, we noted that once the user clicked the hyperlink and accessed the terms of service, "the section heading ('Dispute Resolution') and the sentence waiving the user's right to a jury trial on relevant claims are both bolded."  *Id.* at 79.  Accordingly, we held that, "[a]lthough the contract terms are lengthy and must be reached by a hyperlink, the instructions are clear and reasonably conspicuous," such that a reasonably prudent user would be on inquiry notice of the terms of service.  *Id.*

Here, for all the reasons previously discussed, the Subway advertisement and its accompanying reference to the URL for the website containing the terms and conditions are devoid of the indicia of clarity that satisfied the reasonable conspicuousness standard in *Meyer*.  Instead, to the extent we can analogize the circumstances here to the purely web-based scenarios that have been analyzed in prior cases, the circumstances in the instant case more closely resemble those in which courts have found cluttered websites with a hyperlink to terms and

conditions to be insufficiently conspicuous to provide inquiry or constructive notice to the consumer.

For example, in *Nicosia*, we considered the sufficiency of notice about certain terms of use on Amazon.com. 834 F.3d at 238. There, we noted: the hyperlink to the conditions of use "[wa]s not bold, capitalized, or conspicuous in light of the whole webpage," *id*. at 237; the webpage was cluttered with links (which appeared in several different colors, fonts, and locations) as well as other advertisements and promotions, *id*.; and the page included a substantial amount of other information, such as the customer's address, credit card information, shipping option, and purchase summary, *id.* Thus, we held that reasonable minds could differ over whether the website provided objectively reasonable notice of the terms and conditions, such that a reasonable website user was on inquiry notice of them. *Id*. at 237-38; *see also Starke*, 913 F.3d at 293-94 (distinguishing *Meyer* and noting, among other things, that "the interface here is cluttered with diverse text, displayed in multiple colors, sizes and fonts, and features various buttons and promotional advertisements that distract the reader from the relevant hyperlink" and the offer email "in no way signals to [the plaintiff] that he should click on the link, and it does not advise him that he would be deemed to agree to the contract

terms in the document to be found by clicking that link"); *Specht*, 306 F.3d at 32

(concluding, under California law, that "in circumstances such as these, where

consumers are urged to download free software at the immediate click of a button,

a reference to the existence of license terms on a submerged screen is not sufficient

to place consumers on inquiry or constructive notice of those terms").

As in *Nicosia*, we hold under the totality of the circumstances here—

including the lack of evidence regarding the size of the advertisement, the buried

and vague nature of the reference to the terms and conditions in the

advertisement, the mixed-media nature of the communication, and the limiting

language in the heading on the terms and conditions website once accessed—that

Soliman was not on inquiry notice of the terms and conditions on Subway's

website and therefore is not bound to arbitrate her claim in this case.[6]

We emphasize here, as we did in *Meyer*, that "there are infinite ways to

design a website or smartphone application, and not all interfaces fit neatly into

[particular] categories." 868 F.3d at 75. Therefore, as with purely web-based

---

[6] Because we conclude that the terms and conditions were not reasonably conspicuous, we need not reach the district court's additional holding that Soliman did not manifest assent. Similarly, because we find that the district court properly denied Subway's motion to compel arbitration, we need not address Soliman's other arguments regarding scope and unconscionability as it relates to the arbitration provision.

contracts, we impose no particular features that must be present to satisfy the reasonably conspicuous standard in the context of a mixed-media communication with a consumer such as the case here, involving the use of a "call to action" print advertisement with the consumer and containing a reference to terms and conditions that requires the consumer to then respond by utilizing text messaging on a cellphone. The panoply of technological variations available to companies in the internet/smartphone age, as it relates to the form and content of communication interfaces with consumers, makes any bright-line rule for reasonable conspicuousness in this arena extremely difficult to discern, and we do not attempt to do so here. Instead, each situation will continue to require careful examination on a case-by-case basis under the applicable legal standard.

## III.   CONCLUSION

For the reasons set forth above, we AFFIRM the district court's denial of Subway's motion to compel arbitration and REMAND the case for further proceedings consistent with this opinion.