# In the
# United States Court of Appeals
## for the Second Circuit

———

AUGUST TERM 2023

Nos. 23-521-cv (L); 23-522-cv (Con)

MARIAM DAVITASHVILI and ADAM BENSIMON, individually and on behalf of all others similarly situated,
*Plaintiffs-Appellees*,

PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, NATHAN OBEY,
*Consolidated Plaintiffs-Appellees*,

v.

GRUBHUB INC., DBA Seamless, POSTMATES INC., UBER TECHNOLOGIES, INC., in its own right and as parent of wholly owned subsidiary Uber Eats,
*Defendants-Appellants.*[*]

———

[*] The Clerk of Court is directed to amend the caption as set forth above.

On Appeal from the United States District Court for the Southern District of New York

ARGUED: DECEMBER 15, 2023
DECIDED: MARCH 13, 2025

Before: CABRANES, SULLIVAN, and PÉREZ, *Circuit Judges*.

Grubhub Inc., Postmates Inc., and Uber Technologies, Inc. (jointly, "Defendants") moved to compel arbitration of a putative antitrust class action. The question presented is whether the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) erred in denying the motion of Defendants to compel arbitration. We consider (1) whether an agreement to arbitrate was made between Defendants and Plaintiffs; (2) whether, in the circumstances presented, arbitrability is an issue for the Court or the arbitrator to resolve; and (3) whether the relevant arbitration clauses are enforceable.

Defendants provide online "platforms"—websites or mobile applications—for ordering restaurant meals. Customers place

restaurant orders on a platform for pickup or delivery, and restaurants use the platform to fill those orders. The restaurants agree not to sell meals at lower prices "off-platform"—that is, through channels other than Defendants' web and mobile applications. These agreements are known as no-price competition clauses, or "NPCCs."

This appeal arises from a putative class action against Defendants alleging violations of Section 1 of the Sherman Antitrust Act of 1890 and its state analogues. The case is brought by three classes of restaurant customers: customers who purchased "takeout" or delivery goods directly from a restaurant subject to a Defendant's NPCC; customers who purchased dine-in goods from a restaurant subject to a Defendant's NPCC; and customers who purchased goods through a non-defendant's platform from a restaurant subject to a Defendant's NPCC.

Defendants moved to compel arbitration for the customers who have used Defendants' platforms (jointly, "Plaintiffs"), on the basis of the arbitration clauses in Defendants' respective "Terms of Use." On March 16, 2023, the District Court denied Defendants' motion to compel arbitration, holding that the scope of the arbitration clauses presented issues for the Court, rather than the arbitrator, to resolve, and that they did not apply to Plaintiffs' claims because the claims lacked "any nexus" to Defendants' Terms of Use. This appeal followed.

We now **AFFIRM** the District Court's order in part insofar as it ruled that the threshold question of arbitrability for Plaintiffs' claims

against Grubhub is for the court to decide and that Grubhub's arbitration clause does not apply to Plaintiffs' antitrust claims against Grubhub, **REVERSE** the District Court's order in part insofar as it ruled that Grubhub failed to establish that it formed an agreement to arbitrate with Plaintiffs and that the threshold question for Plaintiffs' claims against Uber and Postmates is for the court to decide, and **REMAND** the cause for further proceedings consistent with this opinion.

Judge Pérez concurs in full in the judgment of the Court and files a separate opinion. Judge Sullivan concurs in part and dissents in part, concurring with the judgment of the Court with respect to Parts II-A and II-B and dissenting with respect to Part II-C.

––––––––

ZACHARY D. TRIPP, Washington, DC (David J. Lender, Eric S. Hochstadt, New York, NY, *on the brief*), Weil, Gotshal & Manges LLP, Washington, DC *for Defendant-Appellant Grubhub Inc.*

ADAM G. UNIKOWSKY, New York, NY (Elizabeth B. Deutsch, *on the brief*), Jenner & Block LLP, Washington, DC *for Defendants-Appellants Uber Technologies, Inc. and Postmates Inc.*

STEPHEN LAGOS, New York, NY (Edward Normand, Velvel (Devin) Freedman, *on the brief*), Freedman Normand Friedland LLP, New York, NY *for Plaintiffs-Appellees*.

———————

JOSÉ A. CABRANES, *Circuit Judge*:

Grubhub Inc., Postmates Inc., and Uber Technologies, Inc. (jointly "Defendants") moved to compel arbitration of a putative antitrust class action. The question presented is whether the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) erred in denying the motion of Defendants to compel arbitration. We consider (1) whether an agreement to arbitrate was made between Defendants and Plaintiffs; (2) whether, in the circumstances presented, arbitrability is an issue for the Court or the arbitrator to resolve; and (3) whether the relevant arbitration clauses are enforceable.

Defendants provide online "platforms"—websites or mobile applications—for ordering restaurant meals.[1] Customers place

———

[1] Grubhub defines a "Mobile Application" as a "software to access Grubhub's websites, technology platforms, and related online and mobile services via a mobile device." Appendix ("A") 134. While Uber and Postmates do not define the term "mobile application" in their Terms of Use, *see infra* note 5, we understand that the Uber and Postmates mobile applications have the same function and have similar characteristics as the Grubhub mobile application. "The term *online platform* is not defined in [any]

restaurant orders on a platform for pickup or delivery, and restaurants use the platform to fill those orders. The restaurants agree not to sell meals at lower prices "off-platform"—that is, through channels other than Defendants' web and mobile applications. These agreements are known as no-price competition clauses, or "NPCCs."[2]

This appeal arises from a putative class action against Defendants alleging violations of Section 1 of the Sherman Antitrust Act of 1890 and its state analogues.[3] The case is brought by three classes of restaurant customers: customers who purchased "takeout" or delivery goods directly from a restaurant subject to a Defendant's NPCC; customers who purchased dine-in goods from a restaurant subject to a Defendant's NPCC; and customers who purchased goods through a non-defendant's platform from a restaurant subject to a Defendant's NPCC.[4]

Defendants moved to compel arbitration for the customers who have used Defendants' platforms (jointly "Plaintiffs"), on the basis of

---

federal statute. An online platform generally refers to any computer application or service that provides digital content and services on the internet." CONG. RSCH. SERV., R47662, DEFINING AND REGULATING ONLINE PLATFORMS (2023).

[2] A-20 (¶ 1).

[3] A-20 (¶ 1), 49-73 (¶¶ 188-214).

[4] A-65-66 (¶¶ 173-75).

the arbitration clauses in Defendants' respective "Terms of Use."[5] On March 16, 2023, the District Court denied Defendants' motion to compel arbitration, holding that the scope of the arbitration clauses presented issues for the Court, rather than the arbitrator, to resolve, and that they did not apply to Plaintiffs' claims because the claims lacked "any nexus" to Defendants' Terms of Use.[6] This appeal followed. We now **AFFIRM** the District Court's order in part insofar as it ruled that the threshold question of arbitrability for Plaintiffs' claims against Grubhub is for the court to decide and that Grubhub's arbitration clause does not apply to Plaintiffs' antitrust claims against Grubhub, **REVERSE** the District Court's order in part insofar as it ruled that Grubhub failed to establish that it formed an agreement to arbitrate with Plaintiffs and that the threshold question for Plaintiffs' claims against Uber and Postmates is for the court to decide, and **REMAND** the cause for further proceedings consistent with this opinion.

---

[5] Defendants' Terms of Use refer to their relationships with customers. Thus, Grubhub defines its Terms of Use as "a contract between [the customer] and [Grubhub] that governs [the customer's] access and use of the Platform and Services." A-124. Uber states that its Terms of Use "govern [the customer's] access or use . . . of the multi-sided digital marketplace platform . . . and any related content or services . . . made available . . . by Uber." A-193. Because Postmates is an Uber subsidiary, Uber's Terms of Use apply equally to Postmates. *See* A-170-173.

[6] *Davitashvili v. Grubhub Inc.*, No. 20-cv-3000, 2023 WL 2537777, at *11-12 (S.D.N.Y. 2023) (Lewis A. Kaplan, *Judge*); *see supra* note 5.

# I. BACKGROUND

Plaintiffs allege that Defendants fixed restaurant meal prices by entering into NPCCs with restaurants in which the restaurants agreed not to charge lower prices off-platform. Plaintiffs claim that these NPCCs have caused them to pay artificially high prices for restaurant meals. They seek injunctive relief and damages based on both their direct purchases from NPCC-bound restaurants through Defendant platforms and their indirect purchases from NPCC-bound restaurants through non-defendant platforms.

Defendants jointly moved to compel arbitration, arguing that their platforms' Terms of Use contained arbitration clauses. On March 16, 2023, the District Court denied the motion to compel.[7] The Court first determined that Plaintiffs agreed to Uber's and Postmates's Terms of Use, but not Grubhub's. Next, the Court held that the enforceability of the arbitration clauses was a question for the Court, rather than the arbitrator, to resolve. The Court concluded that the arbitration clauses in Defendants' Terms of Use did not apply to Plaintiffs' claims because the claims "lacked any nexus to the agreement containing the clause."[8]

Defendants appealed the District Court's order denying the motions to compel arbitration under 9 U.S.C. § 16, which allows interlocutory appeals from orders denying motions to compel arbitration.

---

[7] *Davitashvili*, 2023 WL 2537777.

[8] *Id.* at *10.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."[9] Specifically, Section 2 of the FAA, in relevant part, guarantees that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[10] Because Sections 3 and 4 of the FAA require courts to "respect and enforce the parties' chosen arbitration procedures," the courts must "place[] arbitration agreements on an equal footing with other contracts."[11] The Supreme Court has explained that courts must "rigorously enforce arbitration agreements according to their terms."[12] Under Section 4, a party may move to compel arbitration in accordance with an arbitration agreement.[13] We review *de novo* a district court's denial of a motion to compel arbitration.[14]

---

[9] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

[10] 9 U.S.C. § 2.

[11] *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted).

[12] *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013) (internal quotation marks and citation omitted).

[13] *See* 9 U.S.C. § 4.

[14] *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 269 (2d Cir. 2015).

We hold, first, that Plaintiffs agreed to arbitrate with Defendants. Next, we hold that in the circumstances presented here, the Court should resolve questions of "arbitrability"— that is, whether the instant disputes are subject to arbitration—with respect to Grubhub, while the arbitrator should resolve questions of arbitrability with respect to Uber and Postmates. We conclude that Grubhub's arbitration agreement does not apply to Plaintiffs' antitrust claims.

## A. Plaintiffs Agreed to Arbitrate with Defendants

To determine whether parties agreed to arbitrate, courts apply a "standard similar to that applicable for a motion for summary judgment," that is, courts must "consider all relevant, admissible evidence submitted by the parties" and must "draw all reasonable inferences in favor of the non-moving party."[15] In doing so, the court applies "ordinary state-law principles that govern the formation of contracts"—here, the state-law principles of New York.[16] The party seeking arbitration bears the initial burden of demonstrating that an agreement to arbitrate exists.[17]

---

[15] *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quotation marks and citations omitted).

[16] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The parties do not dispute that New York state law applies. *See* Pls. Br. at 14-15; Grubhub Br. at 24 ("It is undisputed that New York law governs contract formation and contract interpretation in this case.").

[17] *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022).

10

Before we address whether the putative agreements require arbitration of the disputes at issue, we first need to inquire whether an agreement to arbitrate between the parties exists, and whether questions of "arbitrability" are for the court or the arbitrator to decide.[18] We address these questions in turn.

Defendants' Terms of Use contain arbitration clauses. No party disputes that Plaintiffs assented to the Terms of Use of Uber and Postmates.[19] Plaintiffs argue, however, that they did not affirmatively assent to Grubhub's Terms of Use. We disagree.

Under New York law, when "an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent."[20] In determining whether an offeree has inquiry notice of a contract's terms, New York courts evaluate "whether the term was obvious and whether it was called to the offeree's attention"—an analysis that

---

[18] *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 148-149 (2024) (laying out this framework).

[19] *See Davitashvili*, 2023 WL 2537777, at *6.

In the proceedings below, the District Court held that, with respect to Plaintiff-Appellee Bensimon, Uber had not satisfied its initial burden that Bensimon had agreed to an arbitration clause. We do not address this question with respect to Bensimon because Uber does not appeal the District Court's Order as to Bensimon.

[20] *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019).

11

"often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way."[21]

The same principles apply to online contracts, where "we look to the design and content of the relevant interface[22] to determine if the contract terms were presented to the offeree in way that would put her on inquiry notice of such terms."[23] Factors include whether the terms of use are "spatially coupled" with the checkout button, whether the entire screen is visible at once without scrolling, whether the checkout button is "temporally coupled" with the hyperlink[24] to the terms of use, and whether the language is clear.[25]

---

[21] *Id*.

[22] The term "interface" includes websites and smartphone applications. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

[23] *Id.*

[24] "An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or a different document." *Merriam-Webster Online, https://www.merriam-webster.com/dictionary/hyperlink*.

[25] *Id.* at 292 (citing *Meyer*, 868 F.3d at 78 ); *see also id*. at 291 n.8 ("The *Meyer* Court applied California law to the contract formation question, but noted that New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." (quotation marks omitted)).

Here, we conclude that Grubhub's web and mobile application interfaces—screenshots of which were included in the amended complaint—gave reasonable notice of the arbitration provision.[26]

The mobile application checkout page of Grubhub is akin to the one we found, in 2017, to provide inquiry notice in *Meyer v. Uber Technologies, Inc.* As in *Meyer*, the hyperlink to the Terms and Conditions "appears directly below" the checkout button.[27] In addition to being spatially coupled with the checkout button, the notice is temporally coupled because it is presented on the same screen "at a place and time that the consumer will associate with the initial purchase or enrollment"—that is, on the purchase screen itself.[28] Finally, the phrase "By placing your order, you agree," is substantially identical to the "By creating an Uber account, you agree" language in *Meyer* that we held to be "a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms."[29] In short, we conclude that "a reasonably prudent smartphone user" would have notice of Grubhub's Terms of Use for its mobile app.[30]

---

[26] *See* A-120 (Grubhub mobile interface); 122 (Grubhub web interface).

[27] *Meyer*, 868 F.3d at 78.

[28] *Id.* (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 127 (2d Cir. 2012)).

[29] *Id.* at 79.

[30] *Id.*

13

Grubhub's web interface also puts users on inquiry notice. Plaintiffs argue that Grubhub's web interface is akin to the one we found wanting in *Nicosia v. Amazon.com, Inc.* While the Grubhub web interface is not as streamlined as its mobile app, the page is less cluttered than the webpage in *Nicosia*.[31] Additionally, the Grubhub web interface has hyperlinks to Grubhub's Terms of Use that are both spatially and temporally coupled with the checkout button. And the relevant language ("By placing your order, you agree") is the same as the mobile application's.[32] These features, taken together, are enough to provide inquiry notice to a reasonably prudent web user.[33]

Thus, we hold that there is a valid agreement to arbitrate between Plaintiffs and Grubhub.

---

[31] *Compare* A-122 *with Nicosia*, 834 F.3d at 241.

[32] A-122.

[33] We also reject Plaintiffs' argument that Grubhub failed to establish what its mobile and web interfaces looked like at the time Plaintiffs placed their respective orders. Although Grubhub's declaration did not specify the exact date on which the screenshots were taken, the only plausible reading of the declaration is that the screenshots depict the mobile application and website as they appeared at all times relevant to the complaint.

## B. For Grubhub, Arbitrability Is for the Court to Decide. For Uber and Postmates, Arbitrability Is for the Arbitrator to Decide.

When a party moves to compel arbitration under Section 4, the gateway question of "arbitrability" arises.[34] Thus, our next inquiry is related to the question of arbitrability, or, in other words, whether an arbitration agreement covers a specific issue. *First*, we need to determine whether the court or the arbitrator should be the decision-maker on the question of arbitrability. *Second*, if it is for the court to make that determination, we inquire whether the issues are within the scope of the arbitration agreement and if the agreement is enforceable.

We review *de novo* a district court's determination "whether the issue of arbitrability is for the court or for the arbitrator."[35] The Supreme Court has instructed us that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."[36] The FAA provides that the issue of arbitrability should presumptively be resolved by the courts.[37]

Parties can include in the arbitration agreement a provision delegating the question of arbitrability to the arbitrator. This is usually

---

[34] *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (quoting *Rent-A-Center, W., Inc.*, 561 U.S. at 68–69).

[35] *Bell v. Cendant Corp.*, 293 F.3d 563, 565 (2d Cir. 2002).

[36] *First Options*, 514 U.S. at 944 (alterations adopted) (quotation marks and citation omitted).

[37] *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014); *see also* 9 U.S.C. § 2.

called a "delegation clause" or a "delegation provision." When parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."[38]

With respect to Grubhub, the District Court correctly found that the question of arbitrability remains with the Court. Grubhub's arbitration clause clearly and unmistakably states that "issues related to the scope, validity, and enforceability of this Arbitration Agreement are for a court to decide."

As for Uber and Postmates, the District Court denied their motion to compel arbitration, concluding that the dispute belonged in federal court because Plaintiffs had mounted a convincing challenge to the delegation clause contained in the agreements.[39] We disagree.

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract" pursuant to §§ 2, 3, and 4 of the FAA, "unless [Plaintiffs] challenged the delegation provision *specifically*."[40] The District Court found that Plaintiffs had challenged the delegation clause by mentioning it in a footnote that reads: "For the avoidance of doubt, the Platform Plaintiffs challenge the validity of the Delegation

---

[38] *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

[39] *Davitashvili*, 2023 WL 2537777, at *9.

[40] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *Rent-A-Center, W., Inc.*, 561 U.S. at 72 (emphasis added).

16

Clause itself, on the grounds that it would be unconscionable to permit Postmates to enforce that clause."[41]

But this brief aside does not allow Plaintiffs to evade the agreement's delegation clause. "An argument mentioned only in a footnote" is not "adequately raised or preserved for appellate review."[42] All the more so here, where Plaintiffs did not append any argument to their conclusory assertion of the clause's unconscionability.[43]

In any event, Plaintiffs fail to challenge the clause with sufficient specificity. Plaintiffs argue that arbitration *in general* would be unconscionable. Our precedents require something more: Plaintiffs must show why allowing an arbitrator—as opposed to a court—to decide the question of arbitrability would be unconscionable.[44] In

---

[41] *Davitashvili*, 2023 WL 2537777, at *9; *see* A-221.

[42] *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

[43] *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) ("Merely mentioning or simply stating an issue in an appellate brief is insufficient to preserve it for our review: an appellant must advance an argument, and we generally will decline to consider issues that are not sufficiently argued.") (alterations adopted and quotation marks omitted).

[44] *Compare Rent-A-Center*, 561 U.S. 63 (declining to consider plaintiff's unconscionability challenges because none were specific to the delegation provision), *with Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (plaintiffs alleged that the delegation provision was fraudulent).

17

*Gingras*, for instance, the plaintiffs alleged that a tribe-affiliated payday lender had set up an arbitration scheme governed by tribal law where the lender itself could influence the contents of tribal law and where tribal courts had "broad authority" to set aside any arbitral award.[45] According to the plaintiffs, the entire process, including the delegation clause, was designed to funnel arbitration into a "sham" tribunal and "shield" any award from federal court review.[46] Because this was a "specific attack" on the delegation clause itself, we concluded that arbitrability was an issue for the courts.[47] Here, by contrast, Plaintiffs have not shown that it would be unfair to defer to an arbitrator on that question.

Because Plaintiffs have not specifically challenged the delegation clause, we hold that their claims against Uber and Postmates should be sent to an arbitrator to determine whether those claims are arbitrable.

## C. Grubhub's Arbitration Clause Does Not Apply to Plaintiffs' Claims

Plaintiffs argue that even if they can be said to have agreed to arbitrate with Grubhub, their antitrust claims do not fall within the scope of the arbitration clause. We agree.

---

[45] *See Gingras*, 922 F.3d at 118, 126; *see also* Joint Appendix at 55 (¶ 131), *Gingras*, 922 F.3d 112 (No. 16-2019), ECF No. 102.

[46] Joint Appendix at 55 (¶ 131), *Gingras*, 922 F.3d 112 (No. 16-2019), ECF No. 102.

[47] *Gingras*, 922 F.3d at 126.

18

In determining whether the parties' arbitration agreement covers a particular claim—a question we review *de novo*—we "focus[] on the factual allegations in the complaint rather than the legal causes of action asserted."[48] The FAA's scope is limited to "agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship"—that is, controversies that were "cause[d]" by the relationship.[49]

Grubhub's arbitration provision states:

You and Grubhub agree that all claims, disputes, or disagreements that may arise out of the interpretation or performance of this Agreement or payments by or to Grubhub, or that in any way relate to your use of the Platform, the Materials, the Services, and/or other content on the Platform, your relationship with Grubhub, or any other dispute with Grubhub, (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory) (each, a 'Dispute') shall be submitted exclusively to binding arbitration. Dispute shall have the broadest possible meaning. This includes claims that arose, were asserted, or involve facts

---

[48] *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 36 (2d Cir. 2002) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)).

[49] *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 652 n.4 (2022) (noting that the "'arising out of' language normally refers to a causal relationship"); *see also* 9 U.S.C. § 2 (referring to controversies "arising out of" arbitration contracts or transactions).

occurring before the existence of this or any prior Agreement as well as claims that may arise after the termination of this Agreement. This Mutual Arbitration Agreement is intended to be broadly interpreted.[50]

Grubhub argues that Plaintiffs' claims are related to Plaintiffs' "access and use of Grubhub" and thus fall within the scope of the arbitration provision.[51] Not so. Plaintiffs' claims—that Defendants violated federal and state antitrust law by inducing restaurants to agree to NPCCs—have nothing to do with Plaintiffs' individualized use of Grubhub's website or mobile application. Rather, their claims concern their access and use of *other* platforms and restaurants; they allege that they pay higher prices when ordering from these entities because of Grubhub's anticompetitive practices.[52] And to the extent Plaintiffs' use of Grubhub helped improve Grubhub's market share, thereby enabling Grubhub to act anticompetitively, this alleged relation is both too speculative and too attenuated to qualify as a "cause" of Plaintiffs' antitrust claims. For example, in rejecting the applicability of an employment arbitration agreement to a plaintiff's ERISA claims, we noted in *Cooper v. Ruane Cunnif & Goldfarb Inc.* that "others who were never [defendant's] employees could have brought

---

[50] A-143.

[51] Grubhub Br. at 60.

[52] *See* A-21-22 (¶¶ 7-8), 65-67 (¶¶ 170-75, 180(b)).

claims identical to those stated by [plaintiff]."[53] So too here. Plaintiffs who never used Grubhub are just as much class members as those who have. Indeed, Grubhub does not dispute that at least some plaintiffs have "well-plead claims despite never having used any of the [D]efendants' platforms."[54] As the District Court put it, the fact that any members of the three classes of plaintiffs used Grubhub's platform is "purely coincidental."[55]

Because Grubhub's arbitration provision does not apply to Plaintiffs' claims, the District Court—not an arbitrator—should adjudicate the merits of the complaint.

## CONCLUSION

To summarize:

1. Plaintiffs assented to Uber's, Postmates's, and Grubhub's Terms of Use. Therefore, agreements to arbitrate were formed between Plaintiffs and Defendants.

2. Grubhub's Terms of Use clearly and unmistakably delegates arbitrability questions to the court.

---

[53] 990 F.3d 173, 183 (2d Cir. 2021).

[54] *Davitashvili*, 2023 WL 2537777, at *10; *see* Grubhub Br. at 58.

[55] *Davitashvili*, 2023 WL 2537777, at *10. Because we hold that Grubhub's arbitration provision does not apply to Plaintiffs' claims, we do not reach whether the provision is unconscionable or otherwise unenforceable.

3. Uber's and Postmates's Terms of Use delegate arbitrability questions to the arbitrator, and Plaintiffs failed to challenge the delegation provision specifically. Thus, Plaintiffs' claims against Uber and Postmates should be sent to an arbitrator to determine, *inter alia*, whether those claims are arbitrable.

4. Grubhub's arbitration clause does not apply to Plaintiffs' antitrust claims against Grubhub because Plaintiffs' antitrust claims do not arise out of the Terms of Use.

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part the District Court's judgment, and we **REMAND** the cause to the District Court to adjudicate the merits of the complaint with respect to Grubhub and for further proceedings consistent with this opinion.

MYRNA PÉREZ, *Circuit Judge*, concurring:

The specifics of this dispute concern a distinctly modern form of online contract formation, but this is just another skirmish in a long-running battle over the enforcement of arbitration agreements.[1]  I join this Court's well-reasoned opinion in full.  I write separately to emphasize two important limits on merchants' ability to force consumers into arbitration that we recognize and reinforce in our holdings as to Grubhub.

---

[1] *See, e.g.*, *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. 2024) (declining to enforce arbitration agreements that waived "statutory remedies under" ERISA); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (holding that downloading software did not constitute acceptance of terms and therefore plaintiffs were not bound by arbitration clause contained therein); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (1987) (holding arbitration agreement was enforceable and holding certain claims were covered by arbitration agreement but others were not); *World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 364–66 (2d Cir. 1965) (holding that parties validly agreed to arbitrate defense of waiver). This warfare metaphor is deployed frequently in discussions of the last few decades of litigation about arbitration, which may reflect the persistence of the stakeholders on both sides of the issue.  *See, e.g.*, *Ferrell v. SemGroup Corp.*, 485 F. Supp. 3d 1334, 1336 n.1 (N.D. Okla. 2020) ("[T]his case is only the latest skirmish in a running battle between interest groups in employment litigation, with one side looking to weaponize the sweeping effect of mandatory individual arbitration while the other side seeks to neutralize it." (quoting *Bock v. Salt Creek Midstream LLC*, No. 19-1165, 2020 WL 3989646, at \*1 (D.N.M. July 15, 2020))), *rev'd and remanded sub nom. Ferrell v. Cypress Env't Mgmt.-TIR, LLC*, No. 20-5092, 2021 WL 5576677 (10th Cir. Nov. 30, 2021); *Becker v. Delek US Energy, Inc.*, No. 20-CV-285, 2020 WL 4604544, at \*1 (M.D. Tenn. Aug. 11, 2020) (same); *GGNSC Chestnut Hill LLC v. Schrader*, No. CV 16-10525, 2018 WL 1582555, at \*1 (D. Mass. Mar. 31, 2018) ("This case is an example of the many skirmishes that continue along the recently intensifying—but wavering—battle line between those who support resolution of disputes by arbitration and those who support resolution of disputes by conventional litigation."), *aff'd sub nom. GGNSC Admin. Servs., LLC v. Schrader*, 958 F.3d 93 (1st Cir. 2020); *see also* David Horton, *Arbitration About Arbitration*, 70 Stan. L. Rev. 363, 369 & n.39 (2018) (discussing whether certain regulatory action "may be the next battleground in the 'arbitration war'" (quoting Editorial, *The Arbitration War*, N.Y. Times (Nov. 26, 2010), https://www.nytimes.com/2010/11/27/opinion/27sat1.html)).

First, traditional contract law principles apply equally to contracts formed online and to arbitration clauses within such contracts. The relevant principles hold that one cannot assent to a contract term unless one has at least inquiry notice of the term, which "turns on" its "[c]larity and conspicuousness." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (internal quotation marks omitted) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002)). Our Court's decision today sensibly applies *Meyer* in finding Grubhub's arbitration agreement sufficiently conspicuous in the context of Grubhub's online interfaces. But this is likely the high-water mark for enforcement of arbitration agreements in such settings, where the relevant contract clauses could escape consumers' notice.

Second, the panel agrees unanimously on the principle that Section 2 of the Federal Arbitration Act ("FAA") applies only to contracting parties' agreements to arbitrate claims "arising out of such contract or transaction." 9 U.S.C. § 2. We also agree unanimously that one consequence of that principle is that the FAA does not countenance motions to compel arbitration of claims that lack a requisite "nexus" to the contract containing the arbitration clause. *See* Maj. Op. at 22, 24; Dissenting Op. at 2–3. In this case, that principle required denial of Grubhub's motion.

I.

Congress enacted the FAA to make "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (internal quotation marks omitted) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). The FAA was not intended to elevate arbitration

2

agreements above reproach, and while courts often uphold such agreements, there are limits. Arbitration agreements are subject to "generally applicable contract defenses." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). For example, we will not enforce arbitration agreements that are unconscionable, *id.*, or contrary to federal law, *see, e.g.*, *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. 2024). And, relevant here, we will not enforce arbitration agreements to which one party did not assent, for example because they lacked reasonable notice,[2] or because no reasonable person would understand their assent to arbitration to extend to a given dispute.[3] Our holding today is consistent with these limitations.

_____

[2] *See, e.g.*, *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 842 (2d Cir. 2021) (holding consumer lacked reasonable notice of arbitration agreement that was accessible online via a web address displayed on a hard-copy in-store display that failed to alert consumers to what actions would constitute assent); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292–95 (2d Cir. 2019) (holding consumer lacked reasonable notice of arbitration agreement that was accessible via a hyperlink to which the consumer's attention was not called that was contained in a lengthy post-sale email); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 235–37 (2d Cir. 2016) (holding consumer plausibly alleged lack of reasonable notice of arbitration agreement that was accessible via a hyperlink that appeared on a cluttered web page and was not adjacent to the "Place your order" button that would ostensibly manifest assent); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 123 (2d Cir. 2012) (holding consumer lacked reasonable notice of arbitration agreement contained in an unsolicited email sent after enrollment that purported to require no affirmative manifestation of assent); *Specht*, 306 F.3d at 32 (holding consumer lacked reasonable notice of arbitration agreement to which their attention was not called that was accessible only by scrolling down).

[3] *See, e.g.*, *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 277 (S.D.N.Y. 2021) ("Notwithstanding the literal meaning of the clause's language, no reasonable person would think that agreeing to [Defendant's] Terms and Conditions would obligate them to arbitrate literally every possible dispute he or she might have with the service provider." (internal quotation marks omitted)); *see also Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 180–85 (2d Cir. 2021) (holding agreement that undisputedly required arbitration of "all

3

In my view, Grubhub barely threaded the needle through our precedents that have examined reasonable notice of arbitration agreements in the context of online interfaces. If the check-out page in Grubhub's web interface were even marginally more cluttered, the outcome of this appeal would likely be different.[4]

While the details of this case are specific to online consumer transactions, the relevant principles are historically rooted and widely applicable. Every contract, "in order to be binding," "requires a meeting of the minds and a manifestation of mutual assent." *Starke v. SquareTrade, Inc*, 913 F.3d 279, 288 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 715 N.E.2d 1050 (N.Y. 1999)). There can be no meeting of the minds if one party lacks notice of the contract's terms. *Id.* at 289. "Where an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice" and then assents. *Id.* Inquiry notice depends on "whether the term was obvious and whether it was called to the offeree's attention," and that

---

legal claims arising out of or relating to employment" did not cover fiduciary breach claim under ERISA).

[4] Grubhub put two interfaces before us, a mobile application and a "web interface" which "is not as streamlined as its mobile app." Maj. Op. at 16. Because Grubhub failed to offer any evidence before the district court about which of the interfaces Plaintiffs used, we must infer that they used the web interface, which presents a closer call on reasonable conspicuousness and notice. *See Soliman*, 999 F.3d at 833–34 (noting that "[c]ourts deciding motions to compel arbitration apply a standard similar to that applicable for a motion for summary judgment," in which "we draw[] all reasonable inferences in favor of the non-moving party" (internal quotation marks omitted) (quoting *Nicosia*, 834 F.3d at 229)). In any event, I concur in our holding that both interfaces provide (barely) sufficient notice.

4

determination "often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Id.*[5]

Applying these principles to contracts formed between consumers and merchants online, we have recognized that "[r]easonable conspicuousness turns on the design and content of the relevant interface." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Starke*, 913 F.3d at 289). This is a "fact-intensive" inquiry into the totality of the circumstances. *Id.* (internal quotation marks omitted) (quoting *Meyer*, 868 F.3d at 76). And that is reflected in our fact-bound conclusion today that the relevant "features, taken together, are enough to provide inquiry notice to a reasonably prudent web user." Maj. Op. at 17. But our precedent sets out several guardrails that guide our inquiry.

Two of our prior cases bookend the facts of this case: *Meyer v. Uber Technologies* and *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 235–376 (2d Cir. 2016). We have said the "clean, uncluttered, and conspicuous" placement of the terms at issue in *Meyer* "can be used as a model that

---

[5] *Starke* applied New York law, which applies here as well, but we have recognized that "traditional contract formation law does not vary meaningfully from state to state." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702–03 (2d Cir. 2023); *see, e.g., Meyer*, 868 F.3d at 74-75 (reciting similar principles under California law, which contains "substantially similar rules for determining whether the parties have mutually assented to a contract term" (internal quotation marks omitted) (quoting *Schnabel*, 697 F.3d at 119)); *Starke*, 913 F.3d at 287 n.5 (noting that in *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015), the court found New York, California, and Illinois law to be substantively similar on the issue of contract formation); *id.* at 290 n.7 ("In *Nicosia*, we applied Washington law on the question of contract formation, but Washington law is the same as New York law with respect to the issue of contract formation." (citations omitted)); *Schnabel*, 697 F.3d at 119 (similar with respect to Connecticut and California).

this Court has found effective." *Starke*, 913 F.3d at 297. But just a year before *Meyer*, we found that a web interface with extra bells and whistles was too distracting to provide reasonable notice. *See Nicosia*, 834 F.3d at 236–37. We have since tolerated minor deviation from the clarity of *Meyer*, such as using a different font color in an otherwise clean interface. *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 707 (2d Cir. 2023). But we rejected an approach that bore "more resemblance to the Amazon order page in *Nicosia* than to the uncluttered screen in *Meyer*." *Starke*, 913 F.3d at 293 (citations omitted).

Merchants therefore have a very narrow space in which to use an interface that is less lucid than in *Meyer* and still compel arbitration, and Grubhub comes very close to its outer perimeter. Like in *Meyer*, Grubhub's web interface does not hide from consumers that Grubhub would consider their pressing the "order" button to mean they agree to terms accessible via hyperlink. But Grubhub's web interface is unmistakably more chaotic than in *Meyer*, and only marginally less busy than in *Nicosia*. Ultimately, we have declined to "hold that the format used in *Meyer* is the only effective way to use hyperlinks," *Starke*, 913 F.3d at 296–97, and Grubhub's variation on the theme offers *just* enough to edge over the line of reasonableness. As merchants continue to try to enforce contracts of adhesion containing mandatory arbitration clauses, they would do well to strive for clarity.

Finally, I note that Grubhub also just barely met its evidentiary burden to "submit evidence of how [its Terms of Use were] presented to users." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 103 (2d Cir. 2022). Grubhub offered a declaration describing the timeline of updates to Grubhub's Terms of Use and of Plaintiffs' purchases from

6

Grubhub, which purports to attach screenshots of "the Grubhub checkout page." Joint App'x 114 ¶ 10; *id.* 120, 122. Like Grubhub's web interface, its declaration is not a model for future litigants hoping to prevail on a standard akin to the standard for summary judgment. But viewed in its entirety, including both the screenshots and timeline, the declaration is reasonably read to declare that the screenshots depict the web interface on the relevant dates.

## II.

I need not belabor the above because, even though Grubhub's web interface provided barely adequate notice of its arbitration clause, we hold that Grubhub's arbitration clause is unenforceable as to Plaintiffs' claims. The Court appropriately rejects what amounts to an attempt by Grubhub to funnel every conceivable claim against it into arbitration, no matter its content. The principle that controls this case is recognized by all three panel members: "The phrase 'arising out of' [in Section 2 of the FAA] establishes a nexus limitation on which disputes are subject to the FAA," beyond which the FAA "will not apply to any attempts to send that dispute to arbitration." Dissenting Op. at 2; *see* Maj. Op. at 22.

Two important consequences follow where the FAA does not apply due to a lack of nexus. First, the FAA gives federal courts "no power to compel arbitration" in such cases. *See Revitch v. DIRECTV, LLC*, 977 F.3d 713, 724 (9th Cir. 2020) (O'Scannlain, J., concurring) (citations omitted). Because Grubhub moved to compel only under the FAA, that is sufficient to resolve the issue for now. *See* Memorandum of Law in Support of Defendant Grubhub Inc.'s Motion to Compel Arbitration of Certain Named Plaintiffs' Claims,

7

*Davitashvili v. Grubhub, Inc.*, No. 20-cv-3000 (S.D.N.Y. Aug. 26, 2022), ECF No. 73.

Second, while not necessary to decide the instant appeal, the nexus limitation we recognize constrains the FAA's extra protections for arbitration clauses wherever and however they may be enforced. Where claims do not "arise out of" the contract at issue, that means no federal presumption of arbitrability, *see Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1213–14 (11th Cir. 2021), and no preemption of state law perceived as hostile to arbitration, *cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). Many courts have already declined to enforce exceptionally broad arbitration clauses or to interpret them to reach absurd results.[6] Faithful application of the nexus requirement means that in some cases, the FAA does not displace state law limits on arbitration or place a thumb on the scale in interpreting those clauses.

\* \* \*

Online merchants should remember that there are real limits on their ability to force consumers to arbitrate. Those limits protect, among others, consumers who had no reasonable notice they had implicitly agreed to arbitration at all, or who could not reasonably

---

[6] *See, e.g., Revitch*, 977 F.3d at 716-21; *McFarlane*, 524 F. Supp. 3d at 275–79; *Mey v. DIRECTV, LLC*, No. 17-CV-179, 2021 WL 973454, at \*11 (N.D. W. Va. Feb. 12, 2021); *Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891, 903–07 (N.D. Cal. 2020); *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 502–05 (E.D.N.Y. 2016); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253, 1262–63 (S.D. Cal. 2012); *see also Smith v. Steinkamp*, 318 F.3d 775, 776–77 (7th Cir. 2003) (noting that, if certain clauses of an arbitration agreement that appear to go beyond claims "arising from or relating" to the contract were "read as standing free from" the underlying contract, "absurd results ensue").

8

conceive that an arbitration clause was as broad as the merchant later claims.

We have emphasized in several arbitration decisions that we have not prescribed rigid formulas to govern reasonable notice across all online commerce,[7] and we have not done so here. But as our law comes to rest on the outer limits, merchants take on risk when they choose not to be very clear with consumers.

The same is true of efforts to push the limits of arbitrability under the FAA. If merchants are dissatisfied with these limits, they of course may ask Congress to expand the FAA's scope, but importantly, they might not. Merchants may decide that forcing arbitration on consumers who suffer serious injuries unrelated to their transactions is too unpopular a position to take, commercially or politically, in addition to being a losing argument under current law.

---

[7] *See, e.g.*, *Edmundson*, 85 F.4th at 707; *Starke*, 913 F.3d at 296–97; *Soliman*, 999 F.3d at 842 (emphasizing, "as we did in *Meyer*, that 'there are infinite ways to design a website or smartphone application'" and "we impose no particular features that must be present to satisfy the reasonably conspicuous standard").

RICHARD J. SULLIVAN, *Circuit Judge*, concurring in part and dissenting in part:

I agree with the majority that Plaintiffs' claims against Uber must be sent to an arbitrator to decide the threshold question of arbitrability, Maj. Op. Part II-B, and that Plaintiffs agreed to Grubhub's terms of service, Maj. Op. Part II-A. I also agree, as a general matter, that a defendant may not compel arbitration of claims that are "completely unrelated" to the underlying transaction or contract in which the agreement to arbitrate was made. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 722 (9th Cir. 2020) (O'Scannlain, *J.*, concurring). Where I part ways with the majority is in its conclusion that Plaintiffs' antitrust claims here are unrelated to their use of Grubhub's platform. Maj. Op. Part II-C. As Plaintiffs allege in their own complaint, and as they argued in opposing Grubhub's motion to dismiss, their use of Grubhub is what gave it the market power it needed to force restaurants to raise their off-app prices. If that use of Grubhub is so legally significant as to form the crux of Plaintiffs' antitrust theory, then it stands to reason that the antitrust claims "arise out of" Plaintiffs' use of Grubhub, and Grubhub may compel arbitration of those claims under the Federal Arbitration Act ("FAA").

As a threshold matter, I would hold that the FAA – and its presumption in favor of arbitrability – applies to this dispute. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983). Pursuant to section 2 of the FAA, parties may agree to arbitrate any dispute "arising out of" an underlying "contract or transaction" between them. 9 U.S.C. § 2. The phrase "arising out of" establishes a nexus limitation on which disputes are subject to the FAA. *See*

*Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1212–13 (11th Cir. 2021). A dispute cannot be said to "arise out of" the parties' underlying transaction when the dispute is "completely unrelated" to that earlier transaction. *Revitch*, 977 F.3d at 722 (O'Scannlain, *J.*, concurring). While this does not necessarily require a "caus[al]" relationship, "arising out of" does require some meaningful nexus between the transaction and the subsequent dispute. *Id.*

This means that, at least in some cases, a dispute will be so untethered from the parties' initial transaction that the FAA (and its pro-arbitration presumption) will not apply to any attempts to send that dispute to arbitration. For instance, even if a customer were to sign up for a cell phone contract and agree to arbitrate "all disputes" with the cell provider or its "affiliates," the FAA would not compel arbitration in the event that the customer sued one of those affiliates over unwanted robocalls by the affiliates' *satellite television* services. *Id.* at 715 (majority opinion) (affirming district court's denial of motion to compel arbitration on these facts). Nor would the FAA compel arbitration of a cable company employee's claims against his employer for leaking his personal data merely because the employee happened to be a private cable customer who agreed to arbitrate "any and all disputes" when he signed up for cable. *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 277–78 (S.D.N.Y. 2021). In such cases, there would be no nexus between the underlying transaction (for the provision of cell phone and cable services) and the subsequent litigation claims (based on illegal satellite television robocalls and breaches of employee data), and so the FAA would not apply.

Here, by contrast, there is a clear nexus between the litigation

2

claims and the underlying transaction, since Plaintiffs' use of Grubhub's platform is what gave Grubhub the market power to commit the alleged antitrust violations. Indeed, Plaintiffs' entire theory of antitrust liability – which they allege in their complaint and relied on in opposing Grubhub's motion to dismiss – is that Grubhub was able to accumulate so many users on its app that it had "market power" to "force" restaurants to raise their off-app prices. App'x at 32 (¶ 55), 68 (¶ 190); *see also Davitashvili v. Grubhub Inc.*, No. 20-cv-3000 (LAK), 2022 WL 958051, at *10 (S.D.N.Y. Mar. 30, 2022) ("The amended complaint also alleges plausibly that restaurants cannot feasibly avoid doing business with Defendants because restaurants need access to the platforms' customers – many of whom use only one platform due to platform 'stickiness' – in order to generate sufficient sales.").

Put simply, not only is there a nexus between Plaintiffs' use of Grubhub and their antitrust claims, Plaintiffs affirmatively *relied* on that very nexus in asserting their antitrust claims. That is a key distinction between this case and others like *Revitch* and *McFarlane*, in which the plaintiffs' theories of liability were "completely unrelated" to the parties' underlying transaction. *Revitch*, 977 F.3d at 722 (O'Scannlain, *J.*, concurring). And it also distinguishes this case from others relied on by the majority, where "the substance of [the plaintiff's] claims ha[d] *no connection*" to his relationship with the defendant. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183 (2d Cir. 2021) (emphasis added). In other words, if Plaintiffs' use of Grubhub is sufficient to form the crux of Plaintiffs' antitrust theory, it stands to reason that Plaintiffs' claims "aris[e] out of" their use of Grubhub within the meaning of the FAA. 9 U.S.C. § 2.

3

Because the FAA applies to this dispute, so does its "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (internal quotation marks omitted). Applying that presumption here, I would also hold that Grubhub's arbitration clause extends to the antitrust claims. The majority disagrees, concluding that Grubhub's arbitration clause does not cover the antitrust claims because the clause extends only to claims that "relate[] to Plaintiffs' access and use of Grubhub." Maj. Op. at 20 (internal quotation marks omitted). But as just discussed, the antitrust claims do relate to Plaintiffs' use of Grubhub, since Plaintiffs' entire theory of liability is that so many customers (including Plaintiffs) used Grubhub that it was able to force restaurants to raise their off-app prices. *See Davitashvili*, 2022 WL 958051, at *10. And even if we harbored doubts as to whether that nexus is significant enough, the FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

I therefore would hold that Grubhub's arbitration clause validly covers Plaintiffs' antitrust claims, and that those claims must be sent to arbitration. Accordingly, I respectfully dissent from Part II-C of the majority's opinion.

4